COUNTY OF CLARK, A POLITICAL SUBDIVISION OF THE STATE OF NEVADA, AND THE TOWN OF SUNRISE, APPELLANTS, v. CITY OF NORTH LAS VEGAS, RESPONDENT.

SUNRISE MANOR TOWN PROTECTIVE ASSOCIATION, A NEVADA CORPORATION, JOHN N. CATHA, ET AL, APPELLANTS, v. CITY OF NORTH LAS VEGAS, A POLITICAL SUBDIVISION, RESPONDENT.

No. 6584

January 10, 1973                    504 P.2d 1326

[Rehearing denied March 20, 1973]

*Roy Woofter,* District Attorney, *Charles L. Garner,* Chief Deputy of Appeals, Clark County, and *Harry J. Mangrum, Jr.,* of Las Vegas, for Appellants.

*Carl E. Lovell, Jr.,* City Attorney, *Dennis M. Sabbath,* Chief Deputy City Attorney, of North Las Vegas, and *Stanley W. Pierce,* of Las Vegas, for Respondents.

## OPINION

*Per Curiam:*

This is an appeal from judgment entered in favor of the City of North Las Vegas, after a hearing based largely on stipulated facts, upholding the validity of two annexations, annexations Nos. 38 and 41.

The record on appeal is voluminous. Numerous errors are alleged concerning the interpretation of the applicable statutes and the procedures employed by the city. However, the interpretation of NRS 268.582[1] by the trial court, which we deem erroneous, makes it unnecessary to discuss other issues. The

---

[1] NRS 268.582 provides as follows: *"Commencement of action by governing body on receipt of petition.* Upon petition of the board of county commissioners, or upon petition of not less than 10 percent of the property owners in an unincorporated area developed for urban purposes which is approximately described in the petition, the governing body of any city shall commence action in accordance with the provisions of NRS 268.584 to 268.590, inclusive."

trial court held that the petitioning procedure set forth in NRS 268.582 was not a jurisdictional prerequisite to annexation proceedings by the city, and was instead an alternative method of requiring annexation when the city did not proceed on its own initiative. We disagree.

The courts may determine whether a municipal corporation has exceeded legislative authority in extending its boundaries. NRS 268.604; State v. City of Kansas City, 317 P.2d 806 (Kan. 1957); City of Anaheim v. City of Fullerton, 227 P.2d 494 (Cal. 1951).

The Nevada legislature clearly provided in NRS 268.582 that annexation proceedings are to be "commenced" by the city upon petition of the board of county commissioners, or of at least ten percent of the property owners in an area developed for urban purposes. The initiation of annexation proceedings by the filing of petitions is the procedure employed by most of the states. 2 McQuillin, Municipal Corporations § 7.30 at 424 (3rd ed. 1966). The record indicates that the board of county commissioners did not petition the City of North Las Vegas for either Annexations Nos. 38 or 41, and neither were there proper petitions presented "of not less than 10 percent of the property owners" of land developed for urban purposes within each of the annexations so as to confer jurisdiction on the city to enlarge its own boundaries. Cf. City of Tucson v. Garrett, 267 P.2d 717 (Ariz. 1954).

*Annexation No. 38:*

When the initial petitions were circulated by the city among the property owners, the petition contained a boundary description of approximately 1600 acres of land developed for urban purposes, which was denominated Annexation No. 39 by the city. Seventy-five property owners had initially signed the petitions proposing annexation of the 1600 acres to the City of North Las Vegas. Subsequently, the city carved out 240 acres of the original 1600 acres and proposed to annex this smaller area as Annexation No. 38. The record does not indicate that any petitions were circulated by the city, or signed by the property owners, proposing annexation of the area denominated Annexation No. 38. The 75 property owners who had signed the initial petitions represented approximately 74 percent of the land and 36 percent of the assessed valuation within Annexation No. 38. However, the petitions initially circulated by the city for Annexation No. 39 would not constitute

compliance with NRS 268.582, insofar as Annexation No. 38 was concerned, since the petitions must approximately describe the unincorporated area developed for urban purposes which is proposed for annexation. Thus, the city could not rely on the petitions describing an area approximately six times as large as that proposed for annexation in No. 38. 2 McQuillin, supra, § 7.31 at 434.

*Annexation No. 41:*

Petitions which were circulated by the city for Annexation No. 41 were signed by *17* of the *55* owners of land developed for urban purposes within the area. Though the 17 property owners who signed the petitions numerically represent more than 10 percent of the property owners of land developed for urban purposes within Annexation No. 41, they represent *less* than 10 percent of the total 3749 acres of land developed for urban purposes within Annexation No. 41. NRS 268.582 provides that ". . . upon petition of not less than 10 percent of the property owners . . . ,". The statute, however, does not specify whether the percentage calculation should be based on the number of property owners, or whether such percentage should be based on the total acreage and assessed valuation of the area proposed for annexation in the petition, in much the same way that "majority of property owners" is defined in NRS 268.574(3).[2]

The legislature must be presumed to have intended a consistent body of law within NRS 268.570 to 268.608, inclusive, 82 CJS, Statutes § 316 at 548 (1953), and inasmuch as the sufficiency of protests against annexation [NRS 268.592] is determined on the basis of total acreage and assessed valuation, so must the sufficiency of petitions to initiate annexation proceedings [NRS 268.582] be based on total acreage and assessed valuation. Since the petitions which were signed for Annexation No. 41 represented less than 10 percent of the total land developed for urban purposes within the area, such petitions

---

[2]NRS 268.574 provides as follows: *"Definitions.* As used in NRS 268.570 to 268.608, inclusive:

". . .

"3. 'Majority of the property owners' in a territory means the record owners of real property:

(a) Whose combined value is greater than 50 percent of the total value of real property in the territory, as determined by assessment for taxation; and

(b) Whose combined area is greater than 50 percent of the total area of the territory, excluding lands held by public bodies."

14

were insufficient to confer jurisdiction on the city to proceed with Annexation No. 41 pursuant to NRS 268.582.

The absence of adequate petitions pursuant to NRS 268.-582, rendered subsequent actions by the city relative to Annexations Nos. 38 and 41 wholly nugatory, and the two annexation ordinances adopted by the City of North Las Vegas are therefore invalid.