**136 Nev., Advance Opinion 63**

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| JAMES J. COTTER, JR., DERIVATIVELY ON BEHALF OF READING INTERNATIONAL, INC., Appellant, vs. EDWARD KANE; DOUGLAS MCEACHERN; MARY ANN GOULD; JUDY CODDING; MICHAEL WROTNIAK; AND READING INTERNATIONAL, INC., A NEVADA CORPORATION, Respondents. | No. 75053 FILED<br>OCT 01 2020<br>ELIZABETH A. BROWN<br>CLERK OF SUPREME COURT<br>BY<br>CHIEF DEPUTY CLERK |
| JAMES J. COTTER, JR., DERIVATIVELY ON BEHALF OF READING INTERNATIONAL, INC., Appellant, vs. EDWARD KANE; DOUGLAS MCEACHERN; MARY ANN GOULD; JUDY CODDING; MICHAEL WROTNIAK; AND READING INTERNATIONAL, INC., A NEVADA CORPORATION, Respondents. | No. 76981 |
| JAMES J. COTTER, JR., DERIVATIVELY ON BEHALF OF READING INTERNATIONAL, INC., Appellant, vs. EDWARD KANE; DOUGLAS MCEACHERN; JUDY CODDING; | No. 77648 |

20-35953

MICHAEL WROTNIAK; AND READING
INTERNATIONAL, INC., A NEVADA
CORPORATION,
Respondents.

READING INTERNATIONAL, INC., A
NEVADA CORPORATION; MARGARET
COTTER; ELLEN COTTER; GUY
ADAMS; EDWARD KANE; DOUGLAS
MCEACHERN; JUDY CODDING; AND
MICHAEL WROTNIAK,
Appellants,
vs.
JAMES J. COTTER, JR.,
DERIVATIVELY ON BEHALF OF
READING INTERNATIONAL, INC.,
Respondent.

No. 77733

Consolidated appeals from district court orders granting summary judgment, awarding costs, and denying attorney fees. Eighth Judicial District Court, Clark County; Elizabeth Gonzalez, Judge.

*Reversed in part, vacated in part, and remanded in Docket Nos. 75053 & 76981; affirmed in part, reversed in part, and remanded in Docket No. 77648; and affirmed in Docket No. 77733.*

Morris Law Group and Steve L. Morris, Las Vegas,
for Appellant/Respondent James J. Cotter, Jr.

Greenberg Traurig, LLP, and Tami D. Cowden, Mark E. Ferrario, and Kara B. Hendricks, Las Vegas,
for Respondent/Appellant Reading International, Inc.

Cohen Johnson Parker Edwards and H. Stan Johnson, Las Vegas; Quinn Emanuel Urquhart & Sullivan, LLP, and Marshall M. Searcy and Christopher Tayback, Los Angeles, California,
for Respondents/Appellants Guy Adams, Judy Codding, Ellen Cotter, Margaret Cotter, Mary Ann Gould, Edward Kane, Douglas McEachern, and Michael Wrotniak.

BEFORE THE COURT EN BANC.[1]

## OPINION

By the Court, GIBBONS, J.:

James Cotter, Jr. (Cotter Jr.) filed a derivative action on behalf of Reading International, Inc. (RDI), challenging conduct by RDI's board of directors. Both RDI and the directors moved to dismiss the action and later challenged the merits of the action. We conclude that a corporation, as a nominal defendant, is precluded from challenging the merits of a derivative action, but may challenge a shareholder plaintiff's standing in such action. Additionally, we adopt the factors set forth by the Ninth Circuit Court of Appeals in *Larson v. Dumke*, 900 F.2d 1363, 1367 (9th Cir. 1990), for determining whether a shareholder plaintiff in a derivative action fairly and adequately represents the interests of the shareholders under NRCP 23.1. Because Cotter Jr. lacks standing as an adequate representative of shareholders, we reverse the district court's summary judgment orders, vacate the orders denying the motions to dismiss, and remand. Further, we affirm in part, reverse in part, and remand the district court's award of costs

---

[1]The Honorable Kristina Pickering, Chief Justice, voluntarily recused herself from participation in the decision of this matter.

in Docket No. 77648 and affirm the denial of attorney fees in Docket No. 77733.

## FACTS AND PROCEDURAL HISTORY

RDI is a publicly traded Nevada corporation engaged in the development, ownership, and operation of multi-complex cinemas and other retail and commercial real estate in the United States, Australia, and New Zealand. James Cotter, Sr. (Cotter Sr.) was RDI's controlling stockholder, controlling approximately 70% of RDI's Class B voting stock. Cotter Sr.'s children—Cotter Jr., Ellen Cotter (EC), and Margaret Cotter (MC)—all served on RDI's board of directors.[2] In August 2014, Cotter Sr. resigned from his positions with RDI due to health reasons and Cotter Jr. was appointed CEO. Cotter Sr. passed away one month after his resignation.

Shortly after Cotter Sr. passed away, tensions amongst the Cotter siblings began to arise, stemming from the Cotter Sr. trust and estate litigation, which would determine control over RDI, as the majority of the

---

[2]The remaining directors included Edward Kane, a longtime friend of Cotter Sr. and a quasi-member of the Cotter family referred to as "Uncle Ed"; Guy Adams, a registered investment advisor; Douglas McEachern, a former partner at the accounting firm of Deloitte & Touche; and William Gould, a corporate attorney. In 2015, after Cotter Jr. filed the underlying derivative action, and during the ongoing proceedings, two other directors were appointed: Judy Codding, a friend of Cotter Sr.'s wife who resides with EC; and Michael Wrotniak, husband of MC's best friend. Timothy Storey was originally a director and a named defendant in the derivative action, but after Storey resigned as a director, Cotter Jr. agreed to dismiss the action against him.

Class B voting stock was at issue.[3]  In June 2015, the Board terminated Cotter Jr. as CEO and president.  Thereafter, the Board appointed EC as CEO and president.

*Derivative litigation*

On the same day Cotter Jr. was terminated, he filed his initial complaint in the district court.  RDI and the directors moved to dismiss Cotter Jr.'s derivative claims on grounds that Cotter Jr. (1) failed to adequately plead demand futility; (2) lacked standing and was not an appropriate plaintiff under NRCP 23.1; and (3) failed to adequately plead damages. The district court denied the motion in part but granted it in part, finding that Cotter Jr. failed to adequately plead damages.  The district court did not specifically address the challenge to Cotter Jr.'s standing as an adequate representative of shareholders under NRCP 23.1.

In the second amended complaint, the operative complaint in this action, Cotter Jr. sought a finding that his termination was void and requested reinstatement to his positions as president and CEO.  Further, in addition to asserting the directors were interested and/or lacked independence, Cotter Jr. specifically challenged five courses of Board conduct: (1) his termination; (2) the Board's failure to accept a third party's offer to purchase RDI; (3) the revitalization of the Board's hiring executive committee; (4) the appointment of EC as CEO and MC as the senior executive responsible for RDI's New York real estate holdings and their

---

[3]As the factual background surrounding the Board's challenged conduct is contested, we set forth these facts as Cotter Jr. alleges.  We also note that because these appeals have a complex procedural history, we provide that history only as necessary to this disposition.

compensation packages; and (5) the approval of the EC and MC's exercise of an option held by Cotter Sr.'s estate to purchase 100,000 shares of Class B voting stock, which was purchased with Class A nonvoting stock.

*The district court granted summary judgment*

The district court granted partial summary judgment, finding that there was no genuine issue of material fact as to the disinterestedness of Kane, McEachern, Gould, Codding, and Wrotniak. Thus, the district court dismissed the action against those directors on the ground they were protected by the Business Judgment Rule (BJR), leaving only EC, MC, and Adams in the case. The district court order was certified as final, and Cotter Jr. appealed that decision in Docket No. 75053.

Shortly thereafter, the Board ratified the remaining challenged board conduct. The district court granted the directors' motion for summary judgment, concluding Cotter Jr. had no remaining actionable claims, as all challenged board conduct had been ratified by disinterested directors and was protected by the BJR. Cotter Jr. appealed this ruling in Docket No. 76981.

After judgment was entered, RDI sought costs on behalf of itself and the directors, which it had a duty to indemnify. The district court awarded RDI $1,554,319.74 in costs, which included $853,000 for the directors' expert witness fees. Cotter Jr. appealed that ruling in Docket No. 77648. RDI also sought attorney fees for itself and the directors. The district court denied the motion, concluding that Cotter Jr.'s claims were not vexatious. RDI challenges that ruling in Docket No. 77733.

## DISCUSSION

*Docket Nos. 75053 and 76981*

Before we can consider Cotter Jr.'s challenges to the district court's summary judgment, we must initially consider whether RDI, as a nominal defendant, can oppose the underlying action or present argument on appeal. Then we must consider whether Cotter Jr. represents the shareholders adequately enough to have standing under NRCP 23.1.

*Nominal defendant RDI cannot challenge the merits of the underlying derivative action but can challenge Cotter Jr.'s standing in bringing this suit*

Cotter Jr. argues that RDI, as a nominal defendant, does not have standing to oppose these appeals, and since RDI lacks standing, this court need not consider RDI's arguments. We have not previously addressed a corporation's standing as a nominal defendant in a derivative action.[4]

When a derivative action is brought, it is brought on *behalf* of the corporation. *Ross v. Bernhard*, 396 U.S. 531, 538-39 (1970). If the suing shareholder obtains any recovery, that recovery goes to the corporation. *Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1307 n.4 (3d Cir. 1993). "Although the corporation is named in the complaint as a defendant, its interests are not necessarily adverse to those of the plaintiff since it will be the

---

[4]In *In re Amerco Derivative Litigation*, 127 Nev. 196, 218, 252 P.3d 681, 697 (2011), this court noted that the corporation in that matter filed a motion to dismiss the action in the district court, but this court did not address whether the corporation, as a nominal defendant, had standing to do so.

 

beneficiary of any recovery." *Sobba v. Elmen*, 462 F. Supp. 2d 944, 947 (E.D. Ark. 2006) (internal quotations omitted).

Because of the nature of a derivation action, where it is the corporation that stands to benefit, other jurisdictions have concluded that a corporation is required to take a neutral position in a derivative action and cannot oppose or defend such action on the merits. *See Swenson v. Thibaut*, 250 S.E.2d 279, 293-94 (N.C. App. 1978) (providing that a corporation in a derivative action "is required to take and maintain a wholly neutral position taking sides neither with the complainant nor with the defending director"); *Rowen v. Le Mars Mut. Ins. Co. of Iowa*, 282 N.W.2d 639, 645 (Iowa 1979) (providing that a corporation in a derivative action is required to maintain a role of neutrality); *Patrick v. Alacer Corp.*, 84 Cal. Rptr. 3d 642, 652 (Ct. App. 2008) ("[T]he corporation has no ground to challenge the merits of a derivative claim filed on its behalf and from which it stands to benefit."). In fact, "the overwhelming weight of authority supports this rule of corporate neutrality," which precludes a corporation from defending a derivative action on the merits. *Sobba*, 462 F. Supp. 2d at 947-48 & n.4. In line with the majority of jurisdictions, we conclude that a nominal corporate defendant cannot oppose a derivative action on the merits.

Nevertheless, while a corporation cannot oppose the merits of a derivative action, it may still challenge a shareholder plaintiff's ability to bring the underlying derivative action. California permits a corporation to assert certain defenses, such as the shareholder plaintiff's lack of standing. *Patrick*, 84 Cal. Rptr. 3d at 652 (stating that while a nominal defendant corporation generally may not defend a derivative action filed on its behalf, it "may assert defenses contesting the plaintiff's right or decision to bring

SUPREME COURT
OF
NEVADA

(O) 1947A

suit, such as asserting the shareholder plaintiff's lack of standing . . . ."). California courts have noted a corporation cannot file the underlying action because its directors disagree with the necessity of bringing the action. *Id.* at 651-52. Thus, "[i]n a real sense, the only claim a shareholder plaintiff asserts against the nominal defendant corporation in a derivative action is the claim the corporation has failed to pursue the litigation." *Id.* Therefore, if the nominal defendant corporation has a valid reason for not pursuing the litigation, such as when the shareholder plaintiff lacks standing, the corporation should be permitted to raise such a defense.

We determine California's precedent is persuasive, and we conclude a corporation should be able to defend itself from an erroneously brought derivative action. If a corporation may have to later indemnify directors who defend against the derivative action, the corporation should have the ability to stop an unlawfully brought action before excessive costs and attorney fees are incurred. Thus, we hold that a nominal defendant corporation in a derivative action may not challenge or defend the merits of such action, but may challenge a shareholder's standing in bringing a derivative action.

Based on the foregoing, we conclude that to the extent RDI challenges Cotter Jr.'s standing to bring the underlying action or presents arguments on appeal about Cotter Jr.'s standing, it is permitted to do so and we will consider such arguments on appeal. RDI, however, may not challenge the underlying merits of the derivative action either below or on appeal.

*Cotter Jr. lacks standing to bring the derivative suit because he does not adequately represent shareholders*

The Directors argue that the district court abused its discretion in denying their motion to dismiss the derivative action because Cotter Jr. did not have standing, as he does not adequately represent the shareholders as required under NRCP 23.1. Cotter Jr. contends the district court did not abuse its discretion in concluding that he had standing to bring the suit because many factors weighed in favor of Cotter Jr. being able to adequately represent the shareholders' interest.

Because Cotter Jr.'s standing to bring the underlying claims affects the district court's jurisdiction over this matter, and accordingly this court's jurisdiction, we must address this issue before we can consider the challenges to the order granting summary judgment. *Heller v. Legislature of State of Nev.*, 120 Nev. 456, 460, 93 P.3d 746, 749 (2004) (providing that "[s]tanding is the legal right to set judicial machinery in motion" and recognizing that this court can *sue sponte* address standing). "Standing is a question of law reviewed de novo." *Logan v. Abe*, 131 Nev. 260, 263, 350 P.3d 1129, 1141 (2015). When standing arises out of a statute or rule, like it does here, this court will examine the language of the statute or rule to determine if that language provides the plaintiff with standing to sue. *Citizens for Cold Springs v. City of Reno*, 125 Nev. 625, 630, 218 P.3d 847, 850 (2009). NRCP 23.1 provides, in relevant part, "[t]he derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation or association."

In order for a shareholder plaintiff to be an adequate representative of shareholders in a derivative action, the shareholder

plaintiff "must have the capacity to vigorously and conscientiously prosecute a derivative suit and be free from economic interests that are antagonistic to the interests of the class." *Larson*, 900 F.2d at 1367. We take this opportunity to clarify what a district court must consider in evaluating a challenge to a plaintiff's standing to bring a derivative suit on the ground that he or she does not adequately represent shareholders.

The Ninth Circuit has set forth eight factors for determining adequacy of representation:

> (1) indications that the plaintiff is not the true party in interest; (2) the plaintiff's unfamiliarity with the litigation and unwillingness to learn about the suit; (3) the degree of control exercised by the attorneys over the litigation; (4) the degree of support received by the plaintiff from other shareholders; . . . (5) the lack of personal commitment to the action on the part of the representative plaintiff; (6) the remedy sought by plaintiff in the derivative action; (7) the relative magnitude of plaintiff's personal interests as compared to his interest in the derivative action itself; and (8) plaintiff's vindictiveness toward the defendants.

*Id.* (citing to factors enumerated in *Rothenberg v. Sec. Mgmt. Co.*, 667 F.2d 958, 961 (11th Cir. 1982), and *Davis v. Comed, Inc.*, 619 F.2d 588, 593-94 (6th Cir. 1980)). The Ninth Circuit further provided that because these factors are intertwined, "it is frequently a combination of factors which leads a court to conclude that the plaintiff does not" adequately represent shareholders.[5] *Id.* We adopt the *Larson* factors. Accordingly, we hold that

---

[5]For example, the *Larson* court notes that while a court should consider whether other shareholders support the plaintiff shareholder's

a district court evaluating a challenge regarding a plaintiff's standing to bring a derivative suit on the ground that he or she does not adequately represent shareholders must consider the *Larson* factors.

Some of the *Larson* factors weigh in favor of Cotter Jr. as an adequate representative of shareholders. Cotter Jr. is familiar with the litigation, is a true party of interest, is personally committed to the action, and does not appear to be under the control of an attorney pursuing this litigation. However, the remaining *Larson* factors weigh against Cotter Jr. as an adequate shareholder representative. For example, while Cotter Jr. initially received some support from shareholders, that support was withdrawn after discovery. Further, because one of the main remedies Cotter Jr. is seeking is his reinstatement as CEO, his interests are divergent from the shareholders' interests. *See, e.g., Berman v. Physical Med. Assocs., Ltd.*, 225 F.3d 429, 433 (4th Cir. 2000) (explaining that employment disputes are personal and do not create causes of action regarding directors' fiduciary duties). Cotter Jr. very clearly has significant personal interests in this matter as he alleges he was pushed out of the company as a result of a family feud with his sisters. Even Cotter Jr. acknowledged that the family feud regarding Cotter Sr.'s estate led to the underlying issues. Further, Cotter Jr.'s action appears to be vindictively sought in response to his termination as CEO, as evidenced by the timing of his action. Cotter Jr.'s assertion at oral argument that he is an adequate shareholder representative because the shareholders had an interest in the

---

action, a single shareholder is not prevented from bringing a derivative suit, and thus, this factor on its own would not be determinative of the shareholder's adequate representation. *Id.* at 1368.

preservation of the succession plan Cotter Sr. put in place before his death, which provided Cotter Jr. would be CEO, is unpersuasive. If that succession plan became unworkable or not in the best interest of the company after Cotter Sr.'s death, as was alleged by the directors, the plan would no longer be in the shareholders' interest, and once again, only Cotter Jr.'s personal interest would be served by the underlying action. For these reasons, there is substantial evidence that Cotter Jr. does not adequately represent the shareholders because his personal interests far outweigh the shareholders' interests. Accordingly, the district court erred when it denied RDI and the directors' motions to dismiss for lack of standing. Thus, we reverse the district court's summary judgment orders in Docket Nos. 75053 and 76981, vacate the district court's orders denying the motions to dismiss, and remand.[6]

*Docket No. 77648*

*The district court abused its discretion by awarding expert witness fees in excess of the statutory maximum*

Cotter Jr. argues the district court abused its discretion by awarding $853,000 to RDI for the directors' expert witness fees because the experts did not testify in court. RDI relies on this court's decision in *Logan v. Abe*, 131 Nev. 260, 350 P.3d 1139 (2015), to argue that the circumstances of why an expert does not testify may be sufficient to overcome the testifying requirement for a party to receive more than $1,500 in expert witness fees.

---

[6]Accordingly, we do not reach the merits of the district court's orders granting summary judgment and dismissing the directors from the case. Nor do we reach the merits of the challenge to Cotter Jr.'s asserted futility of making a demand.

Under NRS 18.005(5), a district court may award "[r]easonable fees of not more than five expert witnesses in an amount of not more than $1,500 for each witness, unless the court allows a larger fee after determining that the circumstances surrounding the expert's testimony were of such necessity as to require the larger fee." The Court of Appeals adopted factors the district court must consider when determining if an expert witness's testimony warrants a larger fee. *Frazier v. Drake*, 131 Nev. 632, 650-51, 357 P.3d 365, 377-78 (Ct. App. 2015). This court reviews an award of costs for an abuse of discretion. *Id.* at 644, 357 P.3d at 373; *LVMPD v. Blackjack Bonding, Inc.*, 131 Nev. 80, 89, 343 P.3d 608, 614 (2015).

In 2015, this court considered "the circumstances surrounding the expert's testimony, or in this case, the lack thereof, . . . [in determining the costs] were of such necessity as to require the larger fee." *Logan*, 131 Nev. at 268, 350 P.3d at 1144 (internal quotations omitted). However, in 2017, this court concluded an "expert must testify to recover more than $1,500 in expert fees." *Pub. Emps.' Ret. Sys. of Nev. v. Gitter*, 133 Nev. 126, 134, 393 P.3d 673, 681 (2017) (*citing Khoury v. Seastrand*, 132 Nev. 520, 540, 377 P.3d 81, 95 (2016) (implying that the expert must testify to be paid more than $1,500 because NRS 18.005(5) uses the phrase "the circumstances surrounding the expert's testimony were of such necessity as to require the larger fee")). While there may be some extraordinary circumstances where an award of expert witness fees in excess of $1,500 for an expert who did not testify may be warranted, those circumstances are not present here. Unlike in *Logan* where the rebuttal expert did not testify solely because the opposing party did not call his expert, this matter never

SUPREME COURT
OF
NEVADA

(O) 1947A

14

went to trial and nothing Cotter Jr. did prevented the directors' experts from testifying. Because the underlying matter was resolved at the summary judgment stage, without the district court relying on the directors' expert reports, the experts' testimony was not of such a necessity as to warrant the larger fee. Thus, the district court abused its discretion in awarding more than $1,500 per expert.

*The district court did not abuse its discretion by awarding RDI costs*

Cotter Jr. contends the district court also abused its discretion in awarding RDI $581,718.69 in costs when RDI was a nominal defendant.[7] NRS 18.020(3) provides that a prevailing party is entitled, as a matter of course, to all costs against an adverse party where the recovery sought was more than $2,500. Even though a corporation is a nominal defendant in a derivative action, it is not precluded from recovering expenses it incurred as a result of the action, including those costs it incurred through any agreement it may have had to indemnify its directors. Nothing in the record demonstrates the district court abused its discretion by awarding RDI costs. *LVMPD*, 131 Nev. at 89, 343 P.3d at 614. Accordingly, we reverse the award of expert witness fees that exceeded $1,500 per expert, affirm the remainder of the cost award to RDI challenged in Docket No. 77648, and remand.

---

[7]In addition to the amount awarded for expert witness fees discussed above, the district court awarded RDI a total of $701,319.74 in costs. Cotter Jr. only challenges $581,718.69 of that amount, which appears to be the amount the district court awarded RDI for its filing fees, deposition fees and costs, Westlaw costs, and electronic discovery costs. Thus, Cotter Jr. does not challenge the remainder of the amount the district court awarded RDI for costs the directors had incurred, outside of the expert witness fees.

*Docket No. 77733*

RDI argues the district court abused its discretion by denying RDI's motion for attorney fees. We review a decision regarding attorney fees for an abuse of discretion. *Gunderson v. D.R. Horton, Inc.*, 130 Nev. 67, 80, 319 P.3d 606, 615 (2014). The district court found that "this case does not meet the standards of NRS 18.010 to support an award of attorneys' fees" and that Cotter Jr.'s claims were not vexatious. Nothing in the record demonstrates the district court abused its discretion. Accordingly, we affirm the district court order challenged in Docket No. 77733.[8]

*CONCLUSION*

Today, we resolve two matters of first impression in the context of corporate law. First, we hold that a corporate nominal defendant in a derivative action cannot challenge or defend the underlying merits of that action, but may challenge a shareholder plaintiff's standing to bring a derivative suit. Second, we adopt an eight-factor test for determining whether a shareholder plaintiff adequately represents shareholders, and thus has standing to bring a derivative action. Because Cotter Jr. lacked standing as an adequate representative of the shareholders in Docket Nos. 75053 and 76981, we reverse the summary judgments, vacate the orders denying respondents' motions to dismiss, and remand this matter for the district court to enter an order granting the motion to dismiss challenging Cotter Jr.'s standing. We also reverse the district court's order awarding RDI costs to the extent it awarded RDI costs in excess of $1,500 for each

---

[8]RDI also challenges the district court order denying its request for judgment to be entered in its favor. As discussed above, because RDI was a nominal defendant, judgment could not be entered in its favor.

expert retained by the directors, but affirm the remainder of the cost award, and remand for the district court to enter a revised cost order in Docket No. 77648. Lastly, we affirm the district court's denial of RDI's request for attorney fees in Docket No. 77733.

_____, J.
Gibbons

We concur:

_____, J.
Hardesty

_____, J.
Parraguirre

_____, J.
Stiglich

_____, J.
Cadish

_____, J.
Silver